THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS


JASON DEAN,

        Plaintiff,

    v.                                    **Civil Action No. 2:12-CV-63**
                                                **(BAILEY)**

UNITED STATES OF AMERICA, et al.,

        Defendants.


ORDER GRANTING MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND
ORDER OF REMAND

**I.**      **Introduction**

      On this day, the above-styled civil action came before this Court upon consideration

of the United States of America's Motion to Dismiss for Lack of Subject Matter Jurisdiction

[Doc. 7], which was filed on September 10, 2012.  The plaintiff filed his Response in

Opposition to Defendants' Notice of Substitution [Doc. 2] and Defendant's Motion to

Dismiss [Doc. 9] on September 17, 2012.  After a brief extension, the United States filed

its Reply to Plaintiff's Response in Opposition to the Notice of Substitution [Doc. 13] on

October 1, 2012.  Having been fully briefed, the Motion is now ripe for adjudication.  For the

reasons stated below, this Court finds that the United States' employees were acting within

the scope of their employment; therefore, the United States is properly substituted as the

defendant and must be dismissed under the Federal Tort Claims Act due to plaintiff's failure

to exhaust administrative remedies.

## II.    Factual and Procedural History

On September 4, 2012, the United States of America removed the above-styled civil action [Doc. 1] from the Circuit Court of Pocahontas County, West Virginia, under the provisions of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b); 2671, *et seq*. Removal under this provision was based upon a certification by the United States Attorney for this District certifying that defendants Bryan Teter, Joseph Lee Friend, and Dusty Rogers were acting within the scope of their employment regarding the incidents alleged in the Complaint.  Thus, under the provisions of the FTCA, this action was removed from the Circuit Court of Pocahontas County, West Virginia, and the United States was substituted as the defendant in place of defendants Teter, Friend, and Rogers [Doc. 4].

The United States now moves pursuant to Rule 12(b)(1) to dismiss it for lack of subject matter jurisdiction.  The United States asserts that this Court lacks jurisdiction over it based upon the fact that the plaintiff has failed to exhaust his administrative remedies, and the United States has failed to waive sovereign immunity as to intentional torts pursuant to 28 U.S.C. § 2680(h) of the FTCA.

The plaintiff has moved this Court to deny the certification and to re-substitute defendants Teter, Friend, and Rogers.  In support, the plaintiff asserts that these individuals were not acting within the scope of their employment with the United States when they committed the allegations contained in the Complaint.  Therefore, the plaintiff urges this Court to refuse to substitute the United States as a party defendant.

**III.     Court Review of Certification**

The Fourth Circuit Court of Appeals, in **Gutierrez DeMartinez v. DEA**, 111 F.3d 1148, 1153 (4th Cir. 1997), held that the "Attorney General's Certification is conclusive unless challenged."  This case resulted from the United States Supreme Court's decision, **Gutierrez DeMartinez v. Lamagno**, 515 U.S. 417 (1995), which altered the position of the Fourth Circuit Court of Appeals that the Attorney General's Certification was conclusive in all cases.  In response to the Supreme Court's Opinion, the Fourth Circuit held: "When the Certification is challenged, it serves as *prima facie* evidence and shifts the burden to the Plaintiff to prove, by a preponderance of the evidence, that the Defendant federal employee was acting outside the scope of his employment."  **Id**.  If the plaintiff challenges the Certification, the district court must independently review the case to make this determination.  "The Plaintiff's submission must be specific evidence or the forecast of specific evidence that contradicts the Attorney General's Certification decision, not mere conclusory allegations and speculation."  111 F.3d at 1155.

The Court reviews the "'certification, the pleadings, the affidavits, and any supporting documentary evidence' for issues of material fact.  'Only if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and evidentiary hearing.'"  **Kaufman v. Baynard**, 2010 WL 6425939 (December 6, 2010 S.D.W.Va.)(quoting **Gutierrez**, 111 F.3d at 1156).

If the Court finds that the employees were acting outside the scope of their employment, the Court must refuse to substitute the United States.  **Id**.  Alternatively, if the

Court agrees with the certification, then the case proceeds against the United States under the FTCA. 28 U.S.C. § 2679(d)(4). However, the United States would be dismissed from this action for plaintiff's failure to exhaust administrative remedies. *Plyler v. United States*, 900 F.2d 41, 42 (4th Cir. 1990); *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

**IV.   West Virginia *Respondeat Superior* Law**

When challenging certification, a plaintiff has the burden of persuasion to prove by a preponderance of the evidence that the defendants were not acting within the scope of their employment. *Maron v. United States*, 126 F.3d 317, 323 (4th Cir. 1997). In making its determination, this Court must apply West Virginia *respondeat superior* law. *See Williams v. United States*, 350 U.S. 857 (1955). In West Virginia,

> "'scope of employment' is a relative term and requires a consideration of surrounding circumstances, including the character of the employment, the nature of the wrongful deed, the time and place of its commission and the purpose of the act. In general terms, it may be said that an act is within the course of the employment, if (1) It is something fairly and naturally incident to the business and (2) it is done while the servant was engaged upon the master's business and is done, although mistakenly or ill-advisedly, with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and [3] did not arise wholly from some external, independent and personal motive on the part of the servant to do the act upon his own account."

*Foodland v. State ex rel. WV DHHR*, 207 W.Va. 392, 396, 532 S.E.2d 661, 665 (2000); *see also* *LeRose v. United States*, 285 Fed.Appx. 93, 97-98 (4th Cir. 2008).

4

"Scope of employment" as defined in § 29-12A-3(d),

> "means performance by an employee acting in good faith within the duties of
> his or her office or employment or tasks lawfully assigned by a competent
> authority but does not include corruption or fraud."

The Supreme Court of Appeals of West Virginia, in interpreting the above, has held that "the liability-creating provisions of W.Va. Code, 29-12A-4 [1986] are to be broadly construed, and the immunity-creating provisions of W.Va. Code, 29-12A-5 [1986] are to be narrowly construed. *Marlin v. Bill Rich Const., Inc.* [,198 W.Va. 635, 482 S.E.2d 620 (1996)]." *Calabrese v. City of Charleston*, 204 W.Va. 650, FN 7, 515 S.E.2d 814 (1999). Thus, "[t]he general rule of construction in governmental tort legislation favors liability, not immunity." *Id*. at 656 (quoting *Marlin*, 198 W.Va. 635 at Syl. Pt. 2).

The individual defendants in this case were employees of the United States and are thus eligible for liability protection under the Federal Tort Claims Act ("FTCA"). Shortly after the Notice of Removal [Doc. 1] was filed, the United States filed its Notice of Substitution [Doc. 2], certifying that the defendants were acting within the scope of their employment at the time of the conduct alleged in the Complaint. The plaintiff now challenges this substitution.

## V.    Discussion

The plaintiff's Complaint [Doc. 1-1] seeks damages as a result of an alleged assault and battery at the hands of three National Guardsmen, Teter, Friend, and Rogers, who were members of the West Virginia National Guard's 115 Vertical Construction Company, 1092d Engineer Battalion, attending a mandatory Yellow Ribbon Reintegration Program

event at the Snowshoe Mountain Resort.[1]  The Yellow Ribbon Reintegration Program was enacted under the National Defense Authorization Act of 2008, to facilitate access to services for deployed National Guard Member reservists and their families to support health and well being through the deployment cycle.  Plaintiff Jason Dean was a civilian attending the "retreat" with his wife, Melinda Dean, a fellow National Guardsman.

The plaintiff alleges that the three defendant Guardsmen entered the plaintiff's hotel room at approximately 2:00 in the morning and began physically attacking him.  Plaintiff further alleges the men had been consuming alcohol that evening.   Thus, the plaintiff argues these men were acting in their own interests and not within the scope of their employment.  The plaintiff also argues that the Guardsmen's actions were not within the scope of employment because the military did not order these men to take this action to further its purposes.  The plaintiff asserts that the United States military was not aware of, did not order the defendants to go out drinking, to remove their shirts, to enter the plaintiff's room, to beat the plaintiff, and to flee the scene once the police had been notified. [Doc. 9 at 7].  While these might not sound like the acts which would be considered within the average scope of employment, when analyzing scope of employment, one must look to the actual purpose of the acts allegedly committed.  *Maron v. United States*, 126 F.3d 317, 325 (citing *Johnson v. Carter*, 983 F.2d 1316, 1323 (4th Cir. 1993)(en banc)).

Regarding the character of employment, this case involves military-based employment, which by its very nature includes a degree of physical combat.  One such instance would necessarily include protection of fellow soldiers.   In this case, the

---

[1]  This Court notes that the plaintiff has also named Snowshoe Mountain, Inc. as a defendant in this matter.

Guardsmen testified that is exactly what they had done that night.  (Teter Decl., Govt. Ex. 1).   As perceived by the three Guardsmen, the purpose of the force used against the plaintiff was to eliminate the threat posed to Private First Class ("PFC") Melinda Dean, to themselves, and to other Guardsmen present in the plaintiff's hotel room.  (Teter Decl., Gov Ex. 1, Friend Decl., Govt. Ex. 2, and Shafer Decl., Govt. Ex. 3).   A final investigation conducted by Lt. Col. Shafer concluded that the defendants intervened in a domestic violence incident in order to prevent a fellow Guardsman, PFC Dean, from being harmed by the plaintiff [Doc. 13].

The record clearly supports Lt. Col. Shafer's investigation.  In his Affidavit [Doc. 9-3], the plaintiff states that "my ex wife and I were in our hotel room arguing."  The plaintiff also offers the sworn statement of Keisha L. Johnson [Doc. 9-2], who states that "Melina was inside the room crying and yelling 'Help Me.'" Of equal important, Melinda Dean testified that "[w]e started arguing with each other so I wanted to leave the room to avoid conflict." [Doc. 18-8].  Melinda Dean further states that "[the plaintiff] did not want me to leave the room and pushed me away from the door.  I then proceeded to pick up the phone to call for help and he knocked the phone out of my hand."  Id.  When Melinda Dean heard a knock at the door, she states that "[she] started saying 'help me!' . . .."  Id.  Ms. Johnson testified that she feared for her fellow Guardsman's safety, so she and defendant Dusty Rogers told her to leave her room and come back to Ms. Johnson's room. [Doc. 9-3].  She further states that the plaintiff "started instigating the fight . . . and shoved [one of the soldiers].  Id.  Further, she states that the plaintiff was "calling [defendant Dusty Rogers] names and telling him to bring it on . . .."  Id.  The plaintiff's affidavit corroborates Ms. Johnson's account.  The plaintiff states that "[a]t that point her male friend barged into our

7

room and started yelling that Melinda was leaving with him.  I said no she wasn't and for him to leave us alone.  He wouldn't leave so I shoved him out in the hallway . . .." [Doc. 9-3].  That is when the altercation began.

Plaintiff also testifies that it was not until after Rogers punched him that the fellow defendant Guardsmen came down the hallway and into plaintiff's room.  Id.  As the defendant Guardsmen simply came to the aid of another Guardsman who was actively engaged in a physical altercation, it is not unreasonable for them to intervene to protect him.  Plaintiff's briefs suggest that the plaintiff never fought back, yet his Affidavit states that "I was doing anything possible to try and defend myself . . .." [Doc. 9-3].  Melinda Dean's Affidavit lends support where she states that even after the plaintiff had been knocked to the ground, "he started to try and fight back." [Doc. 18-8].  Having reviewed all the evidence, this Court finds that the Guardsmen were acting within the scope of their employment to protect a fellow Guardsman.  This Court also notes that even if the plaintiff was losing the fight, the fellow defendants' conduct certainly falls under that which the *Foodland* Court permits as "mistaken," "ill-advised," or even "wrongful."  207 W.Va. at 396.

To rebut the above, the plaintiff must set forth by a preponderance of the evidence that the defendants had some "external, independent or personal motive to do the act on their own account."  *Foodland*, 207 W.Va. at 396.  Again, the plaintiff simply attempts to argue that the Guardsmen were acting on their own behalf because they had been out drinking and that they fled the scene after the police were notified.  The plaintiff's argument seems to suggest that the three Guardsmen simply got drunk and decided to start a fight.  This Court is not persuaded.  Accordingly, based upon the above evidence, this Court finds

that the plaintiff has failed to meet his burden.

Plaintiff also suggests that if the Guardsmen believed that a domestic violence incident had occurred, they should have reported it to the Army Family Advocacy Program, pursuant to Army Regulation [A.R.] 608-18.   Under that Regulation, "Commanders will report allegations of abuse involving their Soldiers to the RPOC."   This Court cannot speculate as to why the incident was not reported.   What this Court believes is dispositive is that the domestic dispute was actively occurring when the altercation giving rise to the this Complaint occurred.

Next, the plaintiff attempts to bolster his argument that an intoxicated soldier cannot be acting within the scope of his employment by citing to *Sheriden v. United States*, 487 U.S. 392 (1988), and *Bettis v. United States*, 635 F.2d 1144 (5th Cir. 1981).   In those cases, the soldiers' factual circumstances were distinctly different from the case at bar.   As such, this Court finds them inapplicable.

The plaintiff's interpretation of the *Sheriden* case is misplaced.   The plaintiff's interpretation suggests that "even if the alleged tortfeasor is a member of the military, and commits the allegedly negligent acts on base property, it may not follow that the soldier has acted within the scope of his employment." [Doc. 9 at 6].   The plaintiff's reading ignores the fact that, in that case, the United States never certified that the drunken soldier in *Sheriden*, who was firing a rifle at a random car, was acting within the scope of his employment.   *Id*. at 395.   The real issue in *Sheriden* was whether the United States was negligent because three naval corpsmen found the defendant in the hospital drunk and armed, yet took no action to subdue him.   *Id*.   Thus, this Court finds *Sheriden* has no

application to the instant case.

Next, the plaintiff cites to **Hinson v. United States**, 257 F.2d 178 (5th Cir. 1958), wherein the United States was exposed to *respondeat superior* liability because the act giving rise to the alleged negligence in that case had been undertaken at the command of the military in order to further its purposes.  Thus, the plaintiff attempts to distinguish the facts of this case insofar as no direct order was given to the three Guardsmen to use force against the plaintiff.  This Court finds that given the facts of the instant case, the defendants were more than justified in using their independent judgment to protect their fellow Guardsman.  It would be impractical for a soldier to wait for orders every time a fellow soldier was in imminent danger such as PFC Dean.

Having found that the Guardsmen's acts were within the scope of employment, this Court must address its jurisdiction over defendant United States.  There is no substantial question that, if the certification as to scope of employment is valid, then the motion to dismiss must be granted.  The plaintiff has failed to exhaust his administrative remedies. The requirement that a plaintiff must exhaust his administrative remedies before filing an action is jurisdictional and non-waivable.  **Plyler v. United States**, 900 F.2d 41, 42 (4th Cir. 1990); **Perkins v. United States**, 55 F.3d 910, 917 (4th Cir. 1995).  In addition, even if the individuals did commit the intentional torts alleged in the Complaint, the action is barred by 28 U.S.C. § 2680(h).  **Burrell v. United States**, 2001 WL 34047380 (E.D. Va. 2001), *aff'd without opinion*, 33 Fed. Appx. 85 (4th Cir. 2002); **Brittingham v. United States**, 972 F.Supp. 1014, 1017 (E.D. Va. 1997).

## VI.     Conclusion

This Court finds the Notice of Substitution of the United States for defendants Rogers, Teter, and Friend is appropriate as they were acting within the scope of their employment for the United States.  Having found this substitution appropriate, and for the reasons more fully stated above, the Motion to Dismiss Defendant United States of America **[Doc. 7]** is **GRANTED** and the United States is **DISMISSED** as a defendant for plaintiff's failure to exhaust administrative remedies under the FTCA.

As a final matter, this action was removed from the Circuit Court of Pocahontas County, West Virginia, under the provisions of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b); 2671, *et seq.*, when the United States Attorney for this District certified that defendants Bryan Teter, Joseph Lee Friend, and Dusty Rogers were acting within the scope of their employment.  Accordingly, under the provisions of the FTCA, the United States was substituted as the defendant in their place [Doc. 4].  In light of the above, the remaining defendants are the Snowshoe defendants and Mountain Lodge Association.  All parties are citizens of West Virginia.

"[28 U.S.C. § 1367(c)] provide[s] that courts 'may decline' to exercise supplemental jurisdiction in certain circumstances.  In particular, a court has discretion to dismiss or keep a case when it 'has dismissed all claims over which it has original jurisdiction.'  28 U.S.C. § 1367(c)(3).  Recent case law has emphasized that trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished.  *See, e.g.*, **Noble v. White**, 996 F.2d 797, 799 (5th Cir. 1993).  Among the factors that inform this discretionary determination are convenience and

11

fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n.7 (1988); *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284 (3d Cir. 1993). The doctrine of supplemental jurisdiction 'thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values.' *Cohill*, 484 U.S. at 350, 108 S. Ct. at 619." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). Therefore, this Court no longer possesses original jurisdiction over this civil action. This Court notes this civil action is still in its infancy; accordingly, in its discretion, this Court hereby **REMANDS** this action to the Circuit Court of Pocahontas County, West Virginia.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein and to the Clerk of the Circuit Court of Pocahontas County, West Virginia.

**DATED:** November 20, 2012.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE